**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | **No. 22-cr-310-06 (APM)** |
| ) | |
| **CHASE COLE,** ) | |
| ) | |
| **Defendant** ) | |
| ————————————————) | |

<u>**DEFENDANT'S MOTION FOR PRETRIAL RELEASE**</u>

Defendant Chase Cole, through the undersigned attorneys, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Cole appeals the decision of the Magistrate Judge that he should be detained pending trial pursuant to 18 U.S.C. § 3145(b). Mr. Cole has rebutted the presumption of detention with evidence that (1) he has significant connections to the community, (2) he was consistently employed as an electrician prior to the pandemic, and (3) he has no history of violence or possession of a weapon of any kind. Mr. Cole asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

I.      **Background**

On September 15, 2022, an Indictment was filed charging Mr. Cole in Count One of a five-count Indictment. Mr. Cole was charged with conspiracy to distribute and possess with intent to distribute 400 or more grams of a mixture and substance containing a detectible amount of fentanyl under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi).[1] On September 20, 2022, Mr. Cole

---

[1] The Indictment charges six total individuals in Count One and two of those six individuals in Counts Two through Five. Mr. Cole is not indicted in Counts Two through Five, which charge

was arrested at an address where he is known to stay, the home of his two children and their

mother, Monique Wright.  When Mr. Cole was arrested he was not found to be in the possession

of any narcotics or any weapons.  On September 21, 2022, Mr. Cole appeared before the

Magistrate Judge and a detention hearing was set for Friday, September 23, 2022.

The government argued that detention was appropriate under 18 U.S.C. § 3142(f)(1)(C)

and that a rebuttable presumption applied pursuant to 18 U.S.C. § 3142(e)(3)(A).  The Magistrate

Judge heard arguments from Mr. Cole's counsel, as well as counsel for three other co-

defendants, and detained all four defendants, finding that there was no risk of flight, but that the

crime of distribution of fentanyl was so dangerous to the community that no conditions or set of

conditions would reasonably protect the community.

## II.     Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition

against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released

pending trial on personal recognizance or "subject to the least restrictive further conditions, or

combination of conditions that . . . will reasonably assure the appearance of the person as

required and the safety of any other person and the community."  18 U.S.C. § 3142(b) and

(c)(1)(B).  The Supreme Court has explained:  "In our society liberty is the norm, and detention

prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481

U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999)

("Detention until trial is relatively difficult to impose.").  "Nothing in this section shall be

construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  As a

general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances,"

---

conspiracy to commit wire fraud, conspiracy to commit aggravated identity theft, and aggravated
identity theft.

and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406

(9th Cir. 1985) (Kennedy, J.).  Any "[d]oubts regarding the propriety of release should be

resolved in favor of the defendant."  *Id*. at 1405.

Under 18 U.S.C. § 3142(e)(2)(A) a rebuttable presumption exists that no condition or

combination of conditions will reasonably assure the appearance of the person and the safety of

the community where a defendant is charged with a controlled substances offense with a

maximum term of imprisonment of 10 years or more.  As indicted, Mr. Cole is charged with a

controlled substances offense that carries a mandatory minimum sentence of 10 years'

imprisonment and qualifies for the rebuttable presumption.  Where the presumption applies, the

Bail Reform Act imposes a "burden of production on the defendant to offer some credible

evidence contrary to the statutory presumption."  *United States v. Alitishe*, 768 F.2d 364, 371

(D.C. Cir. 1985).  Such a burden is "not heavy" and only requires the production of "some

evidence."  *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's

burden to demonstrate either by a preponderance of the evidence that the defendant is more

likely than not to flee, or by clear and convincing evidence that preventative detention is

necessary to ensure the safety of the community.  *See United States v. Jessup*, 757 F.2d 378, 384

(1st Cir. 1985) (Breyer, J.).  Under the Bail Reform Act, the Court must consider the following

factors when determining whether the government has presented sufficient evidence that Mr.

Cole be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the

evidence; (3) the history and characteristics of the person charged; and (4) the nature and

seriousness of the danger posed by the person to any person in the community if he is released.

18 U.S.C. § 3142(g).

In addition to the legal standard, this Honorable Court should be aware that the Judicial Conference's Committee on Criminal Law has recommended changes to 3142(e)'s presumption in drug cases, in part due to the dramatic increase of detention for low-risk defendants. Undoubtedly, this increase of detention in drug case has had a huge impact on men of color, who have endured harsher enforcement and penalties in under our federal drug laws, as compared to whites for the same offenses with the same prior records.  In 2017, the Judicial Conference's Committee on Criminal Law concluded "that the § 3142(e) presumption was unnecessarily increasing detention rates of low-risk defendants, particularly in drug trafficking cases."[2]  To alleviate this dilemma, the Judicial Conference proposed significant legislative reform that would amend the presumption of detention in drug cases "to limit its application to defendants described therein whose criminal history suggests that they are at a higher risk of failing to appear or posing a danger to the community or another person."[3]  While the Judicial Conference's proposed legislation has not been enacted yet, this Court can certainly take it into account when evaluating the presumption of detention in this case.  Notably, the Conference's position underscores Congress's intent with the Bail Reform Act – to limit pretrial detention for only "*a small but identifiable group of particularly dangerous [persons]* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons."  S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis added).

III.    **Mr. Cole Rebutted the Presumption of Detention with Credible Evidence.**

At the outset, the Magistrate Judge specifically found that there was no evidence to

---

[2] *Report of the Proceedings of the Judicial Conference of the United States* 10 (Sept.12, 2017), archived at https://perma.cc/B7RG-5J78.
[3] *Id*.

support a finding that Mr. Cole was a risk of flight.  Furthermore, the government conceded that Mr. Cole was arrested at an address known to the government and Mr. Cole did not resist arrest or attempt to flee.  Additionally, the Magistrate Judge also noted that despite the time that elapsed from the March 2022 search warrant and the Indictment and arrest of Mr. Cole, there was no attempt to flee.  ECF No. 25 at 6.

Hence, the only issue at hand is whether Mr. Cole rebutted the presumption of detention with "some credible evidence" that there are conditions, which would reasonably assure the safety of the community, with Mr. Cole's release.  Indeed, there is significant credible evidence. First, Mr. Cole has strong ties to the community.  Mr. Cole has lived in the DC metropolitan area his entire life and his family all resides in the area as well.  His parents, brother, sister, two young children, and their mother (Ms. Wright) all live in the DMV area and are a strong support system for Mr. Cole.  He is a father of two young children, whom he takes to and picks up from school, among other things.  Ms. Wright was present at the detention hearing and prepared to testify about his ties to the community and that he is a loving father.  She was and remains able to be his third party custodian.  His parents were also present at the initial status conference and remain supportive of their son.

Ms. Wright also verified that Mr. Cole worked in several positions as an electrician in the metropolitan area and was a member of the International Brotherhood of Electrical Workers. Undersigned counsel understands that the pandemic affected job opportunities for electricians, and as a result, he has not been able to obtain a job since the pandemic; however, since his arrest, his family has learned of openings for electricians on a long-term project near Dulles, Virginia. In any event, the Honorable Court can impose a condition that he seek employment as a condition of release.

The second credible evidence that rebuts the presumption of detention is Mr. Cole's minor criminal record.  He has no history of violence or possession of weapons.  In the instant case, even though the March 2022 search warrant of the apartment resulted in the seizure of ammunition, there are no allegations that Mr. Cole was associated with the ammunition or that he *ever* carried or possessed a weapon.  The government conceded that the ammunition was not relevant to assessing the dangerousness of Mr. Cole, as he was not alleged to have been aware of the searched apartment or its contents.  Mr. Cole was also not found with a weapon (or drugs) when he was arrested.

The third proof of credible evidence is the Pretrial Services Report which shows his history of successful supervision.  Mr. Cole successfully completed probation for his Virginia marijuana conviction in December 2020.  He also successfully completed unsupervised probation for driving without a license convictions in December 2018.  Mr. Cole acknowledges that he failed to appear in 2019 to a hearing in Howard County, Maryland, but in January 2022, Mr. Cole turned himself in voluntarily to resolve that matter and has now completed the six months' unsupervised probation in that case.  There can be several innocent reasons why a bench warrant may issue.  More important is whether the individual wanted to flee from the consequences of the case.  Here, Mr. Cole successfully completed supervision on multiple occasions which shows that he can he will not flee and is willing and able to follow a court order.

The foregoing facts rebut the presumption of detention in this case.

## IV.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Cole is a Flight Risk or Danger to the Community.

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves

> by clear and convincing evidence that *an arrestee presents an*
> *identified and articulable threat to an individual or the*
> *community*, . . . a court may disable the arrestee from executing that
> threat. . . . Therefore, to order a defendant preventatively detained,
> a court must identify an articulable threat posed by the defendant to
> an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S.

at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)

(explaining that the defendant must pose an actual danger to community, not that the defendant

in theory posed a danger to the community).  The government has not and cannot meet its burden

here and Mr. Cole should be released under conditions.  The Bail Reform Act factors

demonstrate that there are conditions or combinations of conditions that can reasonably assure

Mr. Cole's appearance at trial and protect the public.

     A.    *The Nature and Circumstances of the Offense*

The Indictment charges Mr. Cole with conspiracy to distribute and possess with intent to

distribute fentanyl.  The Indictment, the government's detention memorandum, and the

government's presentation in front of the Magistrate Judge all demonstrate that Mr. Cole was not

involved in the manufacture of any drugs.  It also shows that he did not have any role in

procuring or moving the pill presses allegedly used to manufacture the pills or of procuring the

apartments used to house the pill presses.  There are also no allegations of violence or that Mr.

Cole possessed any firearm or ammunition in connection with the alleged offense.  There are

also no allegations that he threatened anyone.  The government itself distinguished at co-

defendant Laura Garvin's hearing appealing her detention that there is a significant difference

between an individual alleged to have manufactured narcotics and one alleged to have been

participating in distribution, arguing that the individuals with more involvement and involvement

in manufacturing are more dangerous if released.  The allegations and the evidence, discussed

further below, all paint Mr. Cole as a very minor player in the alleged conspiracy and only involved with distribution of pills potentially in the 100s; nowhere close to the magnitude of the operation the government alleges in this case.

The allegations that Mr. Cole distributed fentanyl are not clear and convincing evidence to justify his detention as a danger to the community.  The allegation that the offense involves fentanyl is not a basis to detain.  In fact, individuals charged with distribution of fentanyl have been released in this District and the Eastern District of Virginia.  *See, e.g., United States v. Thompson*, No. 18-cr-199-TJK, ECF No. 6; *United States v. Canarte*, No. 20-cr-206-02-RDM, 10/9/2020 Minute Entry Order; *United States v. Brooks*, No. 20-cr-206-03-RDM, ECF No. 29; *United States v. Cherry*, No. 21-cr-199-TJK, ECF No. 12; *United States v. Oliver*, No. 21-mj-26, ECF No. 47.

       B.     *The Weight of the Evidence*

The weight of the evidence is the least important factor for the Court to consider and also does not provide clear and convincing evidence that Mr. Cole would be a danger to the community if released.  The only evidence provided in the detention memorandum that relates to Mr. Cole are a few text messages that the government proffers are between Mr. Cole and Mr. Edwards.  When questioned about the evidence that pertained to Mr. Cole by the Magistrate Judge, the government conceded that there was no evidence of manufacturing, no evidence of guns or ammunition, and no evidence related to the concealment of the pill presses.  The government has also proffered no evidence that Mr. Cole assisted with procuring any of the apartments used to manufacture the pills.  The evidence related to Mr. Cole as proffered by the government is minimal and does not support a finding that he would be a danger to the community if released.  "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]."  *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

C.      *The History and Characteristics of Mr. Cole*

Mr. Cole's history and characteristics not only rebut the presumption as discussed above, but also demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community.  As discussed above, Mr. Cole has significant ties to the community, including his family.  Undersigned counsel understands that Mr. Cole graduated from McKinley Technology High School in Northeast DC before attending community college in Prince George's County, Maryland.  Later, he began taking classes at a skilled trade center to get his certification as an electrician.  Mr. Cole worked as an electrician with a few different companies until the beginning of the pandemic in 2020.  The pandemic brought with it many challenges, including a lack of work for electricians and Mr. Cole's children were out of school. Despite being out of work for two years, Mr. Cole is willing to make seeking employment a condition of his pretrial release.  As proffered at the detention hearing, Ms. Wright confirmed that while out of work, Mr. Cole has been taking his children to school and picking them up from school.  Notably, when he was arrested, it was in the morning, when he and Ms. Wright were getting their children ready for school.

As described in more detail above, Mr. Cole has a minor criminal record, none of which involves any history of violence or possession of weapons.  Mr. Cole's history and characteristics do not provide clear and convincing evidence to support his pretrial detention.

D.      *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Cole's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Cole would be a danger to the community if released.  The Magistrate Judge based his detention decision on the generalized danger of fentanyl to the community and the possibility that the defendants, including Mr. Cole, would continue to distribute if released.  He

stressed the fact that two pill presses were supposedly still at large and it was possible some of the defendants, although not Mr. Cole, might have information about the whereabouts of those presses and the ability to keep using them.  Mr. Cole respectfully disputes that there is clear and convincing evidence to support a finding that he would be a danger to the community.

First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime.  *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety."  *Id*.  The government has not and cannot provide specific evidence to support a finding that Mr. Cole poses an unmitigable threat to public safety.

Second, the government's own actions in this case refute their argument that fentanyl is so dangerous to the community that detention is warranted.  The government became aware of at least one pill press and the manufacturing operation in June 2021, executed a search warrant in March 2022 and discovered 500 pills, loose powder, ammunition, and part of a press, but waited almost six more months to indict and arrest the defendants.  Their argument is untenable—it cannot be the case that the defendant's might distribute fentanyl if released, when the government had evidence of pill manufacturing since June 2021 and did not immediately act to seize the press and halt the distribution.

Additionally, although the government alleges that home detention is inappropriate because distribution occurred out of the defendants' homes, there are no allegations in the detention memorandum pertaining to the residence of Ms. Wright or any residence where Mr. Cole has lived in the past.  The government also acknowledged at the detention hearing that there was no evidence of Mr. Cole being associated with the manufacture of the drugs or the locations of the pill presses.  Hence, the Magistrate Judge erroneously determined that Mr. Cole lived at

one of the locations where the alleged drugs were manufactured.  ECF No. 25 at 6 ("Much of the manufacturing alleged here occurred in the homes of the charged conspirators and the distribution was organized, at least in part, using cell phones. Indeed, Defendant was living there during the period that this drug trafficking conspiracy allegedly operated and when he, using his cell phone, was arranging for the distribution of the counterfeit Oxycodone.").  The government's detention memo identifies four locations where the pill presses are believed or known to be have been located: an apartment in Laurel, Maryland, Detention Memo, ECF No. 6 at 2; (2) an apartment in Navy Yard, id. at 3; (3) Ms. Garvin's address in Annapolis, id. at 4; and (4) Mr. Brigg's residence in Southeast DC, id. at 8.  There are no allegations that Mr. Cole ever resided in any of those locations.  Because this Court reviews the detention order *de novo*, the erroneous factual determination in the Magistrate Judge's order need not be credited.  *See United States v. Chrestman*, 525 F. Supp. 3d 14, 23-24 (D.D.C. 2021) (recognizing that the D.C. Circuit has not addressed the issue of the standard of review applied by a district court to a magistrate judge's detention order, but identifying that every circuit to address the issue found *de novo* review was appropriate and analyzing the applicable statutes).  Hence, this factor alone weighs in favor of release.

Third, the government's argument that if released Mr. Cole might continue to distribute fentanyl is not supported by its own allegations.  The government relied on year-old text messages between Mr. Edwards and Mr. Cole.  The government acknowledges that there is no reason to believe Mr. Cole has knowledge about the location of the presses and has provided no evidence, let alone clear and convincing evidence, to support a finding that Mr. Cole would have the ability to distribute fentanyl if released.

The general danger of fentanyl to the community is not sufficient to establish by clear

and convincing evidence that Mr. Cole himself would be a danger if released. The government has not provided any evidence specific to Mr. Cole to support such a finding and, therefore, he should be released pending trial.

**V.     Mr. Cole Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.**

Mr. Cole must be released because there are conditions that will reasonably assure the safety of the community and Mr. Cole's appearance in court.  A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court.  *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)).  Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community.  *See id*. at 708 n.8.  The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Cole's appearance in court.  Thus, Mr. Cole cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Cole's appearance in court and the safety of the community.

- •     Custody of a third-party custodian, home detention, or home incarceration;

    o  Ms. Monique Wright has agreed to serve as a third-party custodian for Mr. Cole if he were released.  Ms. Wright is the mother of Mr. Cole's two children. Ms. Wright "agrees to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142(c)(1)(B)(i).

    o  Alternatively, Mr. Cole could be placed on GPS monitoring and home detention or home incarceration.  Ms. Wright has indicated that Mr. Cole is welcome to live with her and their children if he is released.

- •     Maintain or actively seek employment, *id*. § 3142(c)(1)(B)(ii);

- •     Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);

- Comply with a curfew, *id.* § 3142(c)(1)(B)(vii);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id.* § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id.* § 3142(c)(1)(B)(ix);

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id.* § 3142(c)(1)(B)(ix); and

- Refrain from contact with any of the other defendants in this case.

Because there are conditions of release that will reasonably assure Mr. Cole's appearance in court and the safety of the community, he should be released.

## VI. Conclusion

For the foregoing reasons, Mr. Cole respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____ /s/ _____
Ubong E. Akpan
Diane Shrewsbury
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500