## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 22-cr-310 (APM)** |
| | **:** | |
| **CHASE COLE,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Now comes the United States of America, by and through the United States Attorney for the District of Columbia, Matthew Graves, and his assistant, Kevin Rosenberg, Assistant United States Attorney for said district and hereby files this sentencing memorandum respectfully requesting a sentence of 57 months of incarceration followed by 3 years of Supervised Release. This number represents the low end of the total offense level, when considering the Defendant's acceptance of responsibility and safety-valve qualification. The Government's request is supported by the following arguments.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In or around August 2021, law enforcement, including the Federal Bureau of Investigation ("FBI"), began investigating a drug trafficking group running a fentanyl pill pressing operation in and around Washington, D.C. and Maryland.  Law enforcement learned that the group was in possession of at least three pill presses, used to press fentanyl powder into counterfeit prescription oxycodone/ Percocet pills which the group then distributed throughout Washington, D.C. and Maryland.

Through the investigation, law enforcement was able to identify the Defendant and others as being involved in this drug trafficking operation. The Defendant knowingly and intentionally agreed with more than one other person to participate in a conspiracy to possess with intent to

distribute various narcotics—including fentanyl.  The conspiracy started in approximately May 2020 and lasted until at least September 2022.

Sometime in May 2020 and lasting through late-September 2022, the conspiracy utilized at least three pill presses to press mixed fentanyl powder into counterfeit prescription pills.  The pills were made to appear as legitimate prescription oxycodone and other prescription pills by using commercial grade pill stamps, or "dyes."

As part of the conspiracy, the Defendant was aware that his co-conspirators were using fentanyl mixtures to make counterfeit prescription pills which would be further distributed and marketed as prescription pills.

As part of the conspiracy, the Defendant distributed the counterfeit pills in a coordinated manner with co-conspirators.  Such distribution included distributions of counterfeit pills to other co-conspirators and to other distributors and/or users.

The investigation began with a fentanyl pill press operation being discovered and seized in Laurel, Maryland. The evidence located at this seizure led the investigators to an apartment in Washington, D.C.

On March 29, 2022, the FBI executed a search warrant at 1346 4th ST SE, Apt. #508, Washington, DC, a stash house used by the conspiracy to run the pill press operation.  During the execution of the search, one of the Defendant's co-conspirators was present.  During the search, law enforcement seized zip log baggies of pills and loose powder, together amounting to more than 516 pills and more than 76 grams of a mixture and substance containing fentanyl.

Law enforcement seized a telephone from the apartment belonging to one of the co-defendants. They searched the phone and recovered numerous text message conversations between

Defendant Cole and his co-defendant discussing pill trafficking.

In an exchange from January 19, 2021, Defendant Cole wrote to Co-Defendant Edwards, "We can meet at my place or yours 100 lil whites /20 blues/ 40yellows." Edwards replied, "Got you." On February 2, 2021, Cole wrote to Edwards, "Yo need a 100 whites bro Got straight cash no hold." Later, in an exchange from May 27, 2021, Cole wrote to Edwards, "Definitely need sum strong blues I'm juss trying get dss money toget for 100 pack or da dudes who want 200."

Cole also discussed the quality of the counterfeit pills with Edwards. In one exchange from May 27, 2021, Cole wrote to Edwards, "Aye bro some these pinks bigger than others in this package Nd da ones dats smaller deteriorating some ima separate Nd just swap for lil whites." Cole included a picture of two pills in the palm of a hand.



Cole wrote, "Left side good Right side bad." Edwards wrote back, "Lemme see." "Ill exchange." The following day, Edwards wrote to Cole, "How many pink" Cole replied, "Yo 140 pinks . . .&these blue girls ain't good like they da same." Edwards responded, "Yooo Kemme make sure Cause i was moving quickly."

3

In another interaction rom October 21, 2021, Cole wrote to Edwards, "Still trying shit blowing me nd Mf callin saying da blues no good [emoji]." Edwards wrote back, "Smh hell no." Cole replied, "2 people said Sumthin." Edwards wrote back, "Idk they may be to far gone . . . I aint got TO many complaints."

Later, on January 11, 2022, Edwards sent Cole a photograph of crushed pills and offered them to Cole for half off. Edwards wrote, "They got sat on but they bang." Cole responded, "People ain't really like dat guava."

The Defendant admitted that he is accountable for more than 40 grams but less than 160 grams of a mixture and substance containing a detectable amount of fentanyl, which represents the total amount involved in the Defendant's criminal conduct, including amounts the Defendant distributed or possessed with intent to distribute and amounts distributed or possessed with intent to distribute by the Defendant's co-conspirators pursuant to jointly undertaken criminal activity that was reasonably foreseeable by the Defendant and within the scope of the Defendant's conspiratorial agreement.

The Defendant's role in the conspiracy included the possession with the intent to distribute at least 40 grams of a mixture and substance containing a detectable amount of fentanyl.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the

defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

## III.    GUIDELINES CALCULATION

The Government agree that the Defendant's offense level, taking into account the safety-valve, is a  is 23. PSR at ¶ fn.3 The Government further believes that his criminal history category is at least a  level III. PSR at ¶ 57. The Defendant's guidelines range would therefore be 57 – 71 months of incarceration. The government is recommending the low end of this range.

## IV.    ARGUMENT

A sentence at the low end of the Guidelines range is appropriate considering the Defendant's moderate criminal history, for controlled substances offenses, driving offenses, an indecent exposure offense, and other violations of the law.  The Government's recommended sentence is also designed to deter others, promote respect for the law, and fulfill the other purposes of sentencing.

### 1.    The Nature, Circumstances, and Seriousness of the Offense

The nature of the offense in question is serious. The members of the conspiracy operated multiple pill presses for the purpose of sending counterfeit oxycodone pills out onto the streets of Washington, D.C., disguised as genuine pharmacy dispensed pills. The plan made use of powder fentanyl to mix with pill binding powder to produce fake pills, because they were cheaper to make and easier to sell at a reduced price.

While there are no allegations that the defendant himself ever pressed pills or was present when the pill presses were used, he was still very involved in the purchase and resale of counterfeit pills.

To date, the Government has seized two pills presses and at least one kilograms of fentanyl in both powder and pill form.

### 2.       The Defendant's History and Characteristics

The Defendant has multiple prior arrests and convictions dating back to 2006. PST at ¶ 59. His first conviction registered in 2013 for a serious offense. PSR at ¶ 48. He continued his offending in 2017 for drug sales. PSR at ¶ 49.  He then sustained another conviction in 2019 for indecent exposure related to a strange incident in Howard County involving indecent exposure and a marijuana seizure. PSR at ¶ 52. This is hardly the defendant's first conviction and involvement in the criminal justice system. Admittedly, many of the offenses are fairly minor, but the instant conviction certainly shows a trajectory toward more serious offenses.

The defendant seems to have been raised with opportunities and in a "bible-based home" but chose to get off track spending time with peers. PSR at ¶ 75a.  He has a high school education and attended some community college. PSR at ¶ 85. It seems that the Defendant had a route to success, but chose this alternative path, involving drug trafficking.

### 3.       The Need to Promote Respect for the Law and Deterrence

The Defendant chose to distribute a dangerous drug to members of our community. Fentanyl is addictive and destroying lives on a daily basis. The Defendant engaged in this conduct over several months, meaning this was not a one-time lapse in judgement. A sentence within the guideline range will certainly deter future narcotics trafficking.

## V.      CONCLUSION

For the foregoing reasons, the Government recommends that the Court impose a sentence at, or near, the low end of the Defendant's guidelines range, followed by 3 years of supervised release.  This sentence is in line with the recommendation of the probation department, assuming the Court agrees with the parties that the Defendant has satisfied all requirement of the safety valve provisions of the First Step Act.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:      *By: /s/ Kevin Rosenberg*
KEVIN L. ROSENBERG
Assistant United States Attorney
District of Columbia
OHIO BAR 0081448
601 D Street, NW
Washington, DC 20530
(202) 252-7833
KEVIN.ROSENBERG@USDOJ.GOV

7